[Cite as *State v. Inskeep*, 2016-Ohio-7098.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2016-CA-2 |
| | : | |
| v. | : | T.C. NO. 15CR92 |
| | : | |
| STEVEN L. INSKEEP | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___30th___ day of _____September_____, 2016.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

THOMAS G. KOPACZ, Atty. Reg. No. 0091202, 1105 Wilmington Avenue, Dayton, Ohio 45420
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant Steven L. Inskeep appeals his conviction and sentence for one count of possession of marihuana, in violation of R.C. 2925.11(A)(C)(3)(c), a felony of the fifth degree, and one count of illegal cultivation of marihuana, in violation of R.C. 2925.04(A)(C)(5)(c), also a felony of the fifth degree.   Inskeep filed a timely notice

of appeal with this Court on January 22, 2016.

{¶ 2} On June 4, 2015, Inskeep was indicted for the following offenses: Count I, possession of marihuana, in violation of R.C. 2925.11(A)(C)(3)(c), a felony of the fifth degree; Count II, illegal cultivation of marihuana, in violation of R.C. 2925.04(A)(C)(5)(c), a felony of the fifth degree; Count III, possession of marihuana, in violation of R.C. 2925.11(A)(C)(3)(d), a felony of the third degree; and Count IV, illegal cultivation of marihuana, in violation of R.C. 2925.04(A)(C)(5)(d), also a felony of the third degree. After being found to be indigent, the trial court appointed counsel to represent Inskeep on June 23, 2015. At his arraignment on the same day, Inskeep waived the reading of the indictment and plead not guilty to all of the charges contained therein.

{¶ 3} On August 12, 2015, Inskeep, acting pro se, filed a letter with the trial court in which he requested that his appointed counsel be removed, citing disagreements over necessary discovery materials and potential constitutional issues. Thereafter, on August 17, 2015, Inskeep filed a pro se motion requesting a hearing regarding his earlier request for the removal of his appointed counsel. Inskeep's appointed counsel subsequently filed a motion to withdraw on August 19, 2015. A hearing was held regarding appointed counsel's removal/motion to withdraw on August 21, 2015. On August 25, 2015, the trial court issued a decision granting appointed counsel's motion to withdraw. On August 27, 2015, Inskeep was appointed new counsel from the Office of the Ohio Public Defender.[1]

{¶ 4} On October 13, 2015, Inskeep filed a motion to suppress evidence obtained by the police from his residence and other property that he leased. Inskeep argued that

---

[1] Attorney William Mooney from the Office of the Ohio Public Defender was appointed to represent Inskeep. Additionally, Attorney Francisco Luttecke, also from the Ohio Public Defender, filed a notice of appearance on Inskeep's behalf.

the search violated his Fourth Amendment rights. Inskeep also challenged the legality of the search warrants used by the police to gain entrance into his properties. The State filed a response to Inskeep's motion to suppress on October 28, 2015. A hearing was scheduled on said motion for November 2, 2015.

{¶ 5} On November 2, 2015, however, Inskeep withdrew his motion to suppress and indicated his wish to plead guilty to Count I, possession of marihuana, and Count II, illegal cultivation of marihuana, both felonies of the fifth degree. In exchange for Inskeep's pleas, the State agreed to dismiss the remaining two counts and recommend that he be sentenced to community control upon disposition. After engaging in a full Crim.R. 11 colloquy, the trial court accepted Inskeep's pleas, found him guilty, ordered a pre-sentence investigation (PSI), and set the matter for a sentencing hearing to be held on December 7, 2015.

{¶ 6} Prior to sentencing on November 25, 2015, Inskeep filed a pro se motion to withdraw his guilty plea, arguing that he was "under debilitating emotional distress" when he entered his guilty pleas. On December 7, 2015, the trial court postponed sentencing and scheduled a hearing on Inskeep's motion to withdraw. On December 16, 2015, Inskeep filed a motion for a psychological evaluation in order to determine his mental condition at the time that he entered his guilty pleas.

{¶ 7} On December 28, 2015, the trial court held a hearing on Inskeep's motion to withdraw his guilty pleas. Initially, the trial court overruled Inskeep's motion for a psychological evaluation. With respect to his motion to withdraw his guilty pleas, Inskeep did not submit any evidence or testimony in support of his argument, but rather rested on the arguments contained in his pro se motion. After addressing the specific factors to be

considered when deciding whether to grant or deny a presentence motion to withdraw a guilty plea, the trial court overruled Inskeep's motion and proceeded to sentencing. Ultimately, the trial court merged Counts I and II and sentenced Inskeep to three years of community control based on his PSI and the recommendation of the State.

{¶ 8} It is from this judgment that Inskeep now appeals.

{¶ 9} Inskeep's first assignment of error is as follows:

{¶ 10} "THE TRIAL COURT ERRED BY ACCEPTING APPELLANT'S GUILTY PLEA, AS SUCH ADMISSION WAS NOT MADE KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY."

{¶ 11} In his first assignment, Inskeep contends that his guilty pleas were not valid because the record of the plea hearing establishes that he did not understand the nature and effect of the guilty pleas. Inskeep also argues that the record of the hearing establishes that he felt compelled to plead guilty by his attorneys.

{¶ 12} An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was made knowingly, intelligently, and voluntarily. *State v. Russell,* 2d Dist. Montgomery No. 25132, 2012–Ohio–6051, ¶ 7. "If a defendant's guilty plea is not knowing and voluntary, it has been obtained in violation of due process and is void." *State v. Brown,* 2d Dist. Montgomery Nos. 24520 and 24705, 2012–Ohio–199, ¶ 13, citing *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). *Brown* at ¶ 13.

{¶ 13} Crim.R. 11(C)(2) requires the court to address the defendant *personally* and (a) determine that the defendant is making the plea voluntarily, with an understanding of

the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, and to require the State to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself. *State v. Brown,* 2d Dist. Montgomery No. 21896, 2007–Ohio–6675, ¶ 3.

{¶ 14} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark,* 119 Ohio St.3d 239, 2008–Ohio–3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g., State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 15} At the plea hearing, the following exchange occurred between the trial court and Inskeep:

Trial Court: *** Are you a United States citizen?

Inskeep: Yes, sir.

Q: Are you under the influence of alcohol or an illegal substance?

A: No, sir.

Q: Have you taken any prescribed medication today?

A: No, sir.

Q: Have you talked with your attorney about your case?

A: Yes, sir.

Q: Did you review your discovery packet containing prosecution materials with your attorney?

A: Yes, sir.

Q: Have you had sufficient time to speak with your attorney about your case?

A: Yes, sir.

Q: *Do you believe that you received enough information about this case to make decisions as to whether your plea of guilt is knowing, intelligent, and voluntary?*

A: *Yes, sir.*

Q: *Do you have confidence in your attorney?*

A: *Yes, sir.*

&#42;&#42;&#42;

The Court: *** Count One, possession of marijuana, is a felony of the fifth degree. It carries with it a maximum of (12) twelve months in prison and a maximum fine of $2,500.00. There is also a mandatory driver's license suspension of not less than six months nor more than five years. Do you

understand that?

Inskeep: Yes, sir.

Q: Count two, illegal cultivation of marijuana, is a felony of the fifth degree offense. It carries with it a maximum of (12) twelve months in prison and a maximum fine of $2,500.00 and a mandatory driver's license suspension of not less than six months and no more than five years. Do you understand that?

A: Yes, sir.

***

Q: Do you believe you understand what you are doing today, Mr. Inskeep?

A: I'm following the advice of my lawyers, Your Honor.

Q: Well, I understand what you are saying when you say that. And you are fortunate to have two lawyers from the State Public Defender's Office handling your case. Lawyers are always placed in a difficult position because they want to earnestly represent their client. And they also have a duty to tell their client about the good parts of their case and the bad parts of their case. And sometimes that can be difficult for the client to hear.

But in the end, *this is about you making your decision*. And so you can take what your lawyers have had to say to you, but in the end you have to process that information. *And in the end, you have to decide what is best for you*. Because if there is [a] penalty that is imposed, your lawyers are not going to be the ones serving it. You are the one serving it. Do you understand that?

A: Yes, sir.

***

Q: Do you believe that you understand what you are doing today?

A: *I have confidence in my attorneys, Your Honor.*

Q: *Are you doing this of your own free choice*?

A: *Yes, sir.*

Q: Do you understand the maximum penalties involved?

A: Yes, sir.

Q: Do you understand that a plea of guilt is a complete admission of your guilt?

A: Yes, sir.

Q: Do you understand that if the Court accepts your plea of guilt, that you could be sentenced immediately?

A: Yes, sir.

Q: Do you understand that if the Court accepts your plea of guilt, you give up certain Constitutional rights[?]  And those include the right to jury trial?

A: Yes, sir.

Q: Do you understand that you give up the right to confront witnesses against you, which is also known as the right to face those who accuse you and cross-examine them?

A: Yes, sir.

Q: Do you understand that you give up the right to have compulsory process for obtaining witnesses in your favor, which means that you have the right

to make witnesses attend and testify in your favor pursuant to subpoena?

A: Yes, sir.

Q: Do you understand that you give up the right to make the State prove your guilt beyond a reasonable doubt before you are found guilty?

A: I do, Your Honor.

Q: And you understand that you give up the right that, if you went to trial, you cannot be compelled to testify against yourself, which is also known as the right to remain silent?

A: I do understand, sir.

Q: Thank you.   Have there been any threats made against you to enter a plea of guilt except the threat of going to trial?

A: No, sir.

Q: Have there been any promises made to you or any promises to recommend something on your behalf except what you heard in court today?

A: No, sir.

***

Q: *Do you understand, Mr. Inskeep, that your lawyer and the State of Ohio believe you've been given all the information you are entitled to so you can make a knowing, intelligent, and voluntary decision as to entering a plea of guilt?*

A: *Yes, sir.*

***

Q: Do you understand that the State believes that they can prove you guilty?

***

A: Yes, sir.

Q: And do you have any defense to the charge, meaning, any reason you should be found not guilty?

A: *Yes, sir.* But I have confidence in my lawyers.   I believe they have my interest in mind, sir.   They are not bad guys.

Q: *If you believe you have a defense, then I'm not clear that the Court can accept your plea of guilt.   You've indicated that* –

A: Would you repeat the question please?

Q: Certainly.   Let me first say that you've indicated that you've discussed this matter with your lawyer.   And you've indicated that you have received all the information in the Prosecutor's discovery packet.   And the Court understands that sometimes lawyers and clients may have differences of opinion as to the way the evidence may look at trial or the way that a Court may consider certain pieces of evidence or the way that the law is to be interpreted.   And I understand that those honest differences of opinion can, at times, be troublesome for clients to accept.

You'll have the opportunity to tell me at sentencing, if the Court accepts your plea of guilt, why certain things happened.   And that is commonly referred to as mitigation evidence.   In other words, that you can share with me why I, as Judge, should take a certain fact pattern less serious or find it more in your favor.   And you'll have the opportunity to do that.   But what we are

talking about today is not why something happened but did something happen. And are you responsible for it.

And so I'm going to ask you again. And if you feel that you have a defense, then the Court has to re-evaluate what the defense is so we can determine whether we can go through that next step of these proceedings. If you do not have a defense, then the Court will ask you if you committed these offenses. And if your statement is yes, then we're farther along the way to the Court accepting your plea of guilt. If your answer is no, then, again, we are faced with the prospect of vacating this plea hearing and moving forward to trial.

You'll be given an opportunity to discuss this question with your attorney as well. In the Court's opinion, all the questions that I've asked of you, you have methodically paused and you have methodically thought about the question I've asked before you've answered. So in the Court's opinion, you are giving thoughtful consideration to every question I have asked you. So this question is no different.

So the question I'm asking, again, *is do you have any defense to the charge or charges, meaning, meaning any reason you should be found not guilty?*

A: *No, Your Honor.*

Q: Do you wish to have more time to speak with your attorney?

A: *No, sir.*

***

Q: *** If you have no questions and you want the Court to accept your plea of guilt, then you and your lawyer each need to sign the form. Do you understand that?

A: Yes, sir.

Q: All right. So we'll pause. Record should reflect that Defendant and Defense Counsel reviewed the form. Both have signed the form. *Do you believe you understand what you are doing, Mr. Inskeep*?

A: *Yes, sir.*

Q: *Are you doing this of your own free choice?*

A: *Yes, sir.*

Q: *Do you want the Court to accept your plea of guilt*?

A: *Yes, sir.*

Q: *Are you sure*?

A: *No, sir, I'm not sure.*

Q: What is the – and the reason the Court asks that question is because, you haven't said, but in this most recent answer you gave some body language to the Court that you either might need a few moments to speak with your lawyer or there may be something else on your mind. *Is there something you wish to address with the Court*?

A: *No, sir. I just would like to know what happened to America*?

Q: By that statement the Court infers that you may be philosophically opposed to being prosecuted for this type of offense. And I can understand that. *And there are two ways to handle that. The first way is by taking*

*your case to trial. The second way is by agreeing to a plea resolution, and then working within the system to change the law.*

In either case though, today we're going to get some kind of finality of your decision. If you want the Court to accept your plea of guilt, you have to tell me that with certainty that you want the Court to accept your plea of guilt. And if you still maintain that you want the case to go to trial, you need to let me know that. But we're not going to have this business of you hiding behind the advice of your lawyers. You need to stand and take a position on the offenses for which you are being charged.

So we're going to pause. You'll have the opportunity to speak to your lawyers. And then we'll return to the question. And I'll ask you the three questions again. Are you doing this of your own free choice? Do you want the Court to accept your plea of guilt? And do you believe you understand what you are doing? So we'll pause.

*** (Pause in proceedings)

Thank you, Counsel. Record should reflect that Defendant and Defense Counsel spoke. *Have you had sufficient to speak with your lawyers, Mr. Inskeep?*

A: Yes, sir.

Q: Do you believe you understand what you are doing?

A: Yes, sir.

Q: Are you doing this of your own free choice?

A: Yes, sir.

Q: Do you want the Court to accept you plea of guilt?

A: Yes, sir.

Q: Are you sure?

A: Yes, sir.

Q: Court accepts your plea of guilt.   [PSI] report is ordered. ***

{¶ 16} The trial court informed Inskeep of the facts underlying the charges against him, the maximum sentence that he faced, and the constitutional rights that he waived by foregoing a trial.   Prior to accepting the plea, the trial court repeatedly asked Inskeep whether he understood what he was doing, whether he was acting of his own free will and not as the result of any promises aside from those incorporated in the plea agreement, and whether he wanted the court to accept the plea.   The only issue Inskeep had with pleading guilty to possession and cultivation of marijuana was that he apparently did not believe those acts should be against the law in the United States, which is clearly not a viable defense to the indicted offenses in Ohio.   Inskeep acknowledged that he had discussed his case with his attorneys, including the elements of the offenses with which he was charged and his potential defenses.   Inskeep stated that his attorney had gone over the plea forms with him and that he was satisfied with his attorneys' representation. In fact, he ultimately acknowledged that he had no defense to the charges.

{¶ 17} In our view, the trial court meticulously insured that Inskeep understood the nature of the proceedings against him and the effect of his guilty pleas.   Furthermore, Inskeep's argument that he was under duress when he pled guilty is contradicted by the record.   The trial court patiently and thoroughly explained all of Inskeep's options to him. At every juncture in the plea proceedings, the trial court permitted Inskeep the opportunity

to consult with his attorneys if he had any questions or concerns regarding his guilty pleas. There is no indication in the record that Inskeep was acting in an anxious manner or had a viable defense to the indictment. Ultimately, Inskeep stated that he accepted the plea bargain as in his best interest and was pleading guilty of his own free will. Therefore, this record amply establishes that Inskeep's guilty pleas were entered knowingly, intelligently, and voluntarily.

{¶ 18} Inskeep's first assignment of error is overruled.

{¶ 19} Inskeep's second assignment of error is as follows:

{¶ 20} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S PRESENTENCE MOTION TO WITHDRAW HIS GUILTY PLEA."

{¶ 21} In his second assignment, Inskeep argues that the trial court erred when it overruled his motion to withdraw his guilty pleas. Specifically, Inskeep argues that the trial court should have granted his presentence motion to withdraw his guilty pleas because he was under "duress and overpowering emotional turmoil" and "out of [his] right mind" during the plea hearing. Inskeep also contends that he believed that his attorneys failed "to prepare earnestly" for the motion to suppress hearing that was originally scheduled for the day he entered his guilty pleas. Therefore, Inskeep asserts that he felt as if he had no choice but to plead guilty "as demanded by his attorneys."

{¶ 22} Before turning to the merits of Inskeep's argument, we must determine the standard applicable to his motion. Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Under the foregoing rule, a pre-

sentence motion to vacate a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Nevertheless, even under the pre-sentence standard, the right to withdraw a plea is not absolute and a trial court retains discretion to overrule a pre-sentence plea-withdrawal motion. *State v. Simpson,* 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, ¶ 7*.* Even under the pre-sentence standard, "a defendant must show a reasonable and legitimate basis for the withdrawal of the plea." Id. at ¶ 10. " 'A change of heart is not enough," and "a trial court's finding regarding a defendant's true motivation is entitled to deference." *Id.*

{¶ 23} Accordingly, a trial court's ultimate decision to grant or deny a pre-sentence motion to withdraw a guilty plea is subject to review for an abuse of discretion. *State v. Thomas*, 2d Dist. Montgomery No. 25331, 25332, 2014-Ohio-1120, ¶ 24.

{¶ 24} "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 553 N.E.2d 597 (1990); *Feldmiller v. Feldmiller,* 2d Dist. Montgomery No. 24989, 2012–Ohio–4621, ¶ 7.

{¶ 25} Ohio courts often consider nine factors when evaluating a plea-withdrawal motion. Inskeep urges us to apply those factors here. They include:

(1) whether the accused is represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the

motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea.

*State v. Preston,* 2d Dist. Montgomery No. 25393, 2013–Ohio–4404, ¶ 19.

**{¶ 26}** Consideration of the foregoing factors involves a balancing test. No single factor is dispositive. *Id.* at ¶ 20. In reviewing the various factors, the ultimate issue remains whether a reasonable and legitimate basis for withdrawing the plea exists. The question for us is whether the trial court abused its discretion in making this determination. *Id.*

**{¶ 27}** As previously discussed, prior to Inskeep's sentencing hearing on December 28, 2015, the trial court held a hearing on his motion to withdraw his guilty pleas. We note that at the beginning of the motion to withdraw hearing, Inskeep informed the trial court that he did not want to present any additional testimony or evidence with respect to his motion to withdraw. Rather, Inskeep chose to rely on his motion as written. In ruling on Inskeep's motion to withdraw, the trial court stated the following:

Trial Court: In looking at this case, the Court sets out the nine factors and will respond to those factors. With regard to whether the Defendant was represented by highly competent counsel, the Court finds that Attorney Mooney is highly competent. And Attorney Luttecke, by the very nature of working on appellate and post-conviction issues, brings a unique perspective for understanding Constitutional issues and the plea process.

And the Court finds that both counsel are highly competent.

The Court also finds that Defense Counsel Mooney was vigilant in pursuing the defense of the Defendant in terms of reviewing the discovery and filing the necessary motion to suppress. Court also finds that both counsel reached a favorable resolution for the Defendant that resulted in dismissing higher degree felonies and receiving a promise to recommend community control.

Court also notes that in his motion to withdraw, on page three, the Defendant acknowledged the quality of his lawyers by stating, "I'm not saying my lawyers are bad."

With regard to the second factor, whether the Defendant had an extensive Criminal Rule 11 plea hearing, the Court finds that Defendant was placed under oath prior to answering the questions. The Defendant understood the nature of the charges and the maximum penalties involved. Understood that a plea was a complete admission of guilt. And that by pleading guilty he was waiving constitutional rights of a jury trial. Confrontation, compulsory process, obtaining witnesses both against him and in his favor, and the requirement of proof beyond a reasonable doubt. As well as that he could not be compelled to testify against himself.

With regard to the third factor, the Court finds Defendant was afforded the opportunity to present desired testimony and evidence at this motion to withdraw plea. With regard to full and fair consideration of the Defendant's motion to withdraw plea, the Court evaluated the viability of the

Defendant's position in his motion. The Court – well, in the opinion of the Court, it did the requisite research to look for sound law to support the Defendant's contention or support the Prosecutor's stated position at the hearing.

With regard to the motion to withdraw guilty plea and its timing, the Court finds it was neither reasonable nor unreasonable. The motion was filed (13) thirteen days before sentencing. And the Court notes that the Second District just recently ruled on State versus David Massey, which was also a motion to withdraw guilty plea that was denied by this Court and upheld by the Second District. And in the Massey case the Defendant had filed his motion (13) thirteen days before sentencing.

With regard to whether Defendant's motion sets forth specific reasons for the withdrawal, the Court finds that the Defendant's reason for withdrawing his plea was because he was under distress and overpowering emotional turmoil in entering this plea. And in the opinion of this Court, it is clear that Defendant regrets entering his plea of guilt and not proceeding forward with Constitutional [sic] challenging search of his residence and property.

With regard to the seventh factor, whether he had a sufficient understanding of the nature of the charges, the Court finds that the Defendant, under oath, was not under the influence of alcohol or drugs. He did not take prescription medication. He indicated that he had confidence in his attorney. Spoke with his attorney. Had understanding and enough

information as to making decisions as to whether the plea of guilt was knowing, intelligent, and voluntarily made. And the Court's notes indicate that the Court made a point at the conclusion of the plea hearing to point out that in the Court's view, based on the demeanor of the Defendant, the Defendant gave serious consideration to the Court's questions.

With regard to the eighth factor whether Defendant failed to demonstrate that he was perhaps not guilty or had a complete defense, the Court finds that in Defendant's motions he did not indicate that he had received new information or new evidence. And at the plea hearing the Defendant indicated that he had no defense to the charges under oath. And then the Court also went back and did a motion to suppress analysis, which the Court will set out in more detail in this entry. But in the opinion of the Court, the Court examined the Constitutionality of the search warrants and the questioning of the Defendant and the questioning of his partner Ms. Shaffer. And the Court finds that there was a likelihood that the motion to suppress would have been denied.

With regard to the ninth factor whether the State would be prejudiced by the withdrawal, there is no allegation that a confidential informant would be compromised. That the identity of a confidential informant would be compromised as a result of going forward with the trial. There is a case that sets forth that prejudice will result to the prosecution when one or more witnesses become unavailable [due] to the delay of the trial. *** But the Court finds that there is no allegation of the State's witnesses have become

unavailable.

In the opinion of the Court, the Court finds that the Defendant has failed to demonstrate [a] reasonable basis for wanting to withdraw his plea of guilt. He does not claim new evidence to demonstrate innocence. He does not claim that he was misled to entering his plea. Does not claim that he was represented by deficient counsel. In the opinion of the Court, the thing that Defendant does claim, and does so very strongly, is that he claims that he was, these are the Court's words. Not the Defendant's words. He was ashamed by his decision to enter his plea as opposed to challenging the Government's action. And the Court views that as a change of heart as opposed to a position that would necessitate a withdrawal of the plea.

So for those reasons, the Court denies the Defendant's motion to withdraw a guilty plea.

{¶ 28} Upon review, we conclude that the record reflects that Inskeep did not have legitimate grounds for withdrawing his pleas. Inskeep alleged in his pro se written motion that he was under "duress and overpowering emotional turmoil" and "out of [his] right mind" during the plea hearing. Inskeep further argues that he believed that his attorneys failed "to prepare earnestly" for the motion to suppress hearing that was originally scheduled for the day he entered his guilty pleas. As a result, Inskeep asserts that he felt he had no choice but plead guilty. These assertions, however, are belied by the transcripts from his Crim.R. 11 plea hearing and the hearing on his motion to withdraw. The trial court noted that Inskeep's attorneys are zealous and experienced counsel who filed various motions on his behalf, attended hearings where they advocated for Inskeep,

and obtained a plea agreement that reduced a potentially lengthy prison sentence to a recommendation from the State for community control.

{¶ 29} During the plea hearing, Inskeep indicated that he was satisfied with the representation afforded him, and he had sufficient time to discuss the matter with his lawyers. Inskeep acknowledged that he had not been threatened or promised anything other than the dismissal of charges against him in return for his guilty pleas. Inskeep stated he was not under the influence of drugs or alcohol. Inskeep did not indicate to the court that he was under any emotional stress nor did the trial court observe such. Inskeep indicated that his plea was voluntary and acknowledged that he understood the nature of the charges against him. Inskeep acknowledged all of his rights, indicated that he understood them, and signed the plea forms.

{¶ 30} It is apparent from the record that the trial court gave Inskeep's presentence motion to withdraw full and fair consideration. For the foregoing reasons, we conclude that Inskeep was not entitled to withdraw his pleas under the pre-sentence standard applicable to his pro se written motion. Inskeep's change of heart was not sufficient to justify withdrawal of the pleas, and the record does not reflect any legitimate reason for allowing him to do so.

{¶ 31} Inskeep's second assignment of error is overruled.

{¶ 32} Inskeep's third and final assignment of error is as follows:

{¶ 33} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS HEARING TO WITHDRAW HIS GUILTY PLEA, AS DEFENSE COUNSEL HAD A CONFLICT OF INTEREST."

{¶ 34} In his third and final assignment, Inskeep argues that he received ineffective

assistance of counsel at the hearing on the motion to withdraw his guilty pleas. Specifically, Inskeep argues that his appointed attorneys were deficient because he felt compelled to plead guilty because they failed to properly prepare his motion to suppress, i.e. failed to contact or interview witnesses for the suppression hearing. Inskeep also argues that his attorneys were "conflicted" and therefore ineffective because they did not testify at the motion to withdraw hearing. Inskeep further asserts that had they been called to testify at the hearing, they would have potentially had to testify against their own client, hence the "conflict" argued by Inskeep.

{¶ 35} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * *. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland,* 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*" *State v. Williams*, 2d Dist. Greene No. 2011-CA-44, 2012-Ohio-1240, ¶ 30.

{¶ 36} "Generally, counsel's performance falls below the norm if he fails to advocate the defendant's cause, fails to keep the defendant informed of important developments, or fails to use the requisite level of skill necessary to ensure the integrity of the adversarial proceedings." *State v. Williams*, 2d Dist. Greene No. 2011 CA 44, 2012-

Ohio-1240, ¶ 31, quoting *State v. Peeples,* 94 Ohio App.3d 34, 45, 640 N.E.2d 208 (4th Dist.1994). In the instant case, we have already found that Inskeep's complaint that he felt like he was pressured to plead guilty is not supported by the record. Based on our review of the transcript, defense counsel did no more than what any good attorney would do. Obviously, defense counsel strongly believed that Inskeep would be convicted and that accepting the plea deal was in their client's best interest. Defense counsel conveyed these opinions to Inskeep and encouraged him to accept the State's offer. During the Crim.R. 11 hearing, Inskeep admitted that no one forced or coerced him into accepting the plea agreement and that he did so of his own free will.

{¶ 37} Where nothing in the record supports a defendant's ineffective assistance of counsel claim other than his own self-serving statements, the record is insufficient to overcome the presumption that the plea was voluntary. *State v. Laster,* 2d Dist. Montgomery No. 19387, 2003–Ohio–1564, ¶ 8. In such a case, a trial court does not err when it overrules a motion to withdraw a plea pursuant to Crim.R. 32.1. We also note that Inskeep's allegations of ineffective assistance do not constitute new evidence that he was unaware of at the time he entered into the plea. Rather, his argument in this regard is grounded on matters outside the record which can only be addressed by a post-conviction relief motion. *Id.*

{¶ 38} Lastly, we find that Inskeep's reliance on our opinion in *State v. Strickland,* 2d Dist. Montgomery No. 25673, 2014-Ohio-5451, is misplaced. In *Strickland,* the defendant orally sought to withdraw a guilty plea prior to sentencing based on trial counsel's performance during plea negotiations. *Id.* at ¶ 4 and 18. In considering the motion, the trial court placed counsel under oath and questioned him "to obtain additional

information about defense counsel's experience and the plea communications in order to thoroughly and expeditiously address Strickland's motion to withdraw his plea." *Id.* at ¶ 22 and 24. On appeal, we found that "calling defense counsel as a witness placed counsel in the difficult and unexpected position of having to testify against his client, rather than act as Strickland's advocate." *Id.* at ¶ 25. Thus, the court "denied Strickland the right to counsel when it called defense counsel to testify * * * without affording new counsel to Strickland to protect his interests while defense counsel testified." *Id.* at ¶ 30. In the instant case, the trial court did not call either of Inskeep's attorneys to testify at the hearing on the motion to withdraw. More importantly, at the hearing, Inskeep chose not to present any evidence or testimony, but rested upon his pro se motion to withdraw.

{¶ 39} Inskeep's third and final assignment of error is overruled.

{¶ 40} All of Inskeep's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Jane A. Napier
Thomas G. Kopacz
Hon. Nick A. Selvaggio